**Sheldon L. Pollock**
**Alison Conn**
**Travis Hill**
**Yitzchok Klug**
**Alexander Levine**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, New York 10004-2616**
**212-336-9135 (Hill)**
**Hilltr@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**DAVID REICHMAN,**<br><br>**Defendant,**<br><br>**-and-**<br><br>**JUSTINE REICHMAN and JUSTINE REICHMAN, AS TRUSTEE OF THE JUSTINE REICHMAN 2021 TRUST A/K/A JUSTINE REICHMAN 2021 TRUST DATED JULY 14, 2021,**<br><br>**Relief Defendants.** | **<u>COMPLAINT</u>**<br><br>**26 Civ. 8713**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant David Reichman ("Reichman" or "Defendant"); and Relief Defendants Justine Reichman ("J. Reichman") and Justine Reichman, as Trustee of the Justine Reichman 2021 Trust a/k/a Justine Reichman 2021 Trust dated July 14, 2021 ("Justine Reichman 2021 Trust") (collectively, "Relief Defendants"), alleges as follows:

## SUMMARY

1. From approximately 2016 to June 2024 (the "Relevant Period"), Defendant Reichman—former Chief Executive Officer ("CEO") and Chairman of Global Tech Industries Group, Inc. ("Global Tech"), whose common stock is quoted on OTC Link ATS—engaged in a fraudulent scheme in which he caused Global Tech to issue tens of millions of shares of its stock to his daughter, ex-wife, girlfriend, and an affiliated entity, among others (collectively, the "Share Recipients") by falsely telling Global Tech's investors, and in some cases, its Board of Directors and transfer agents, that these issuances were for services rendered to Global Tech by the Share Recipients. In fact, as Reichman knew or recklessly disregarded, the Share Recipients did not provide any services to Global Tech. During the Relevant Period, Reichman also failed to disclose his own sales of Global Tech stock.

2. The issuances to the Share Recipients harmed Global Tech investors by significantly diluting the value of pre-existing shareholders' shares.

3. In one instance, Reichman caused 940,000 shares to be issued to an individual ("Individual E") and signed Commission filings fraudulently representing that the shares were issued for services. Individual E sold his shares and transferred 90% of the proceeds (around $1.4 million) to Reichman.

4. Reichman also furthered his fraudulent scheme by concealing from shareholders and the Commission that his daughter, Relief Defendant J. Reichman, was a significant shareholder of Global Tech stock.

5. In a Global Tech Form S-1 Registration Statement that Reichman signed and caused to be filed with the Commission in connection with an August 2021 offering, Reichman

fraudulently failed to disclose that J. Reichman and a company affiliated with her collectively held 6.9% of Global Tech's stock. This fraudulent offering raised around $3.3 million.

6. Reichman also failed to disclose as related person transactions the Global Tech share issuances to J. Reichman and the affiliated company, and he directed others, including Global Tech's former President, not to disclose that his daughter, J. Reichman, was a beneficial owner of more than 5% of Global Tech stock.

7. Lastly, in 2022, Reichman authorized the sale of 10 million shares of Global Tech stock from a trust established for the benefit of Global Tech employees. Despite the sale, Reichman continued to state in Global Tech Commission filings that the shares remained in the trust and had not been "committed for release."

8. Reichman's fraudulent scheme was lucrative for him and his daughter J. Reichman. When the price of Global Tech stock rose significantly in 2021 and 2022, J. Reichman, DOT8, Inc., and Individual E sold the shares that had been fraudulently issued to them, generating proceeds of approximately $8 million for J. Reichman and $1 million for Reichman.

9. Reichman received an additional approximately $2.5 million from the proceeds of the fraudulent August 2021 offering.

10. Reichman and J. Reichman subsequently used around $2.5 million of these proceeds to purchase J. Reichman's home, the deed of which is held by Justine Reichman as Trustee of the Justine Reichman 2021 Trust.

## VIOLATIONS

11. By virtue of the foregoing conduct and as alleged further herein, Defendant has violated Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)],

Sections 10(b) and 16(a) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b) and78p(a)], and Rules 10b-5 and 16a-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.16a-3], and aided and abetted Global Tech's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1].

12. Unless Defendant is restrained and enjoined, Defendant will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

13. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

14. The Commission seeks a final judgment:

a. Permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated;

b. Ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

c. Ordering Defendant to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

d. Permanently enjoining Defendant from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him,

participating in the issuance, purchase, offer or sale of any security, provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal accounts, pursuant to Securities Act Section 20(b) [15 U.S.C. § 77t(b)] and Exchange Act Sections 21(d)(1) and 21(d)(5) [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)];

e. Permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

f. Ordering Relief Defendants to pay, with prejudgment interest, all ill-gotten gains by which they were unjustly enriched, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; and

g. Ordering any other and further relief the Court may deem just and proper.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and 28 U.S.C. § 1331.

16. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

17. Venue is proper in the Southern District of New York pursuant to Securities Act

Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendant may be found in, is an inhabitant of, or transacts business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District. For example, Defendant was the CEO of Global Tech, whose principal executive offices were reported within this District; Global Tech stock is quoted on OTC Link located within this District; and during much of the Relevant Period, Reichman was a resident of New York, New York.

## DEFENDANT

18. **Reichman**, age 82, currently resides in Los Angeles, California. From May 2001 to September 18, 2024, Reichman was the Chief Executive Officer, Chairman of the Board of Directors ("Board"), Chief Financial Advisor, and Principal Accounting Officer of Global Tech. Reichman held a majority of the voting rights of Global Tech stock and exercised control over Global Tech's operations.

## RELIEF DEFENDANTS

19. **J. Reichman**, age 54, resides in Larkspur, California. J. Reichman is Reichman's daughter. She received significant share issuances of Global Tech stock in 2016 and 2019.

20. **J. Reichman, as Trustee of the Justine Reichman 2021 Trust**. J. Reichman is trustee of the Justine Reichman 2021 Trust, a revocable trust that holds the deed to J. Reichman's home. The home was purchased using the proceeds Reichman and J. Reichman received from the fraudulent scheme.

## OTHER RELEVANT INDIVIDUALS AND ENTITIES

21. **Global Tech** is a Nevada corporation, originally incorporated in July 1980 under a different name. Thereafter, its name was changed several times, most recently in July 2017,

from Tree Top Industries, Inc. ("Tree Top") to Global Tech. Unsolicited quotations for Global Tech's common stock are submitted on OTC Link ATS. Throughout the Relevant Period, Global Tech's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act. Global Tech does not appear to have maintained headquarters; its address was a UPS box in New York, New York. On September 18, 2024, in an action brought by Global Tech shareholders in Nevada state court, the court appointed a receiver for the company. The receiver subsequently removed the entire Global Tech management team, including Reichman, the former Global Tech President, and the Directors.

22. **DOT8, Inc. ("DOT8")** is a Wyoming corporation, originally incorporated in 2016 under a different name. Reichman was initially the sole Director of this entity. On March 28, 2017, the entity changed its name to DOT8. Global Tech reported DOT8 as a subsidiary on its federal tax returns but did not disclose it as a subsidiary or related person in its financial filings. DOT8 was administratively dissolved from May 2018 to March 2020 but is currently registered with the state of Wyoming. In 2022, DOT8 corporate filings began to list J. Reichman as DOT8's President and Director. In June 2023, J. Reichman made "corrective" filings with the state of Wyoming stating that earlier filings naming Reichman as a Director were defective and made due to an oversight. Global Tech issued DOT8 a total of six million shares in two issuances in 2016 and 2018.

23. **Former Global Tech President**, age 72, was President and a director of Global Tech from the fall of 2009 through September 18, 2024.

## FACTS

### I. Background

24. During the Relevant Period, Global Tech had little revenue, no significant operations, and only two employees: Reichman and the Former Global Tech President.

25. According to its annual financial statement filed with the Commission (called a "Form 10-K") for the fiscal year ended December 31, 2023, Global Tech's business model was "to increase shareholder value through the acquisition of companies with significant growth potential."

26. Except for one entity it acquired and briefly held in December 2021, Global Tech did not acquire any companies during the Relevant Period.

27. Throughout the Relevant Period, Global Tech operated with large net losses and negative operating cash flows. In every year from its inception through December 2023, the company incurred net losses, and it reported an accumulated deficit of $346 million in its 2023 Form 10-K.

28. According to Global Tech's periodic reports filed with the Commission, it relied on loans from third parties and cash advances to fund its operations, and it compensated its service providers with Global Tech stock.

## II. Reichman's Scheme to Fraudulently Issue Stock to the Share Recipients

29. From at least 2016 to December 2019, Reichman engaged in a scheme to enrich himself and his family, and defraud Global Tech investors, by causing Global Tech to issue shares to the Share Recipients purportedly in exchange for services they provided to the company.

30. In fact, as Reichman knew as Global Tech's CEO and from his personal relationships with some of the Share Recipients, the Share Recipients never provided any services to Global Tech.

31. Between March 2016 and December 2019, Reichman caused Global Tech to issue a total of more than 32 million shares to the Share Recipients.

32. Global Tech falsely represented in its 2016 through 2020 Forms 10-K filings (the "10-K Filings"), which Reichman signed, that the shares it issued to the Share Recipients had been issued for "services."

33. The 10-K Filings stated the total number of shares that had been issued for services, and the stock issued to the Share Recipients was included in those total share amounts, although the 10-K Filings did not identify or reference the Share Recipients.

34. To effectuate his scheme, Reichman needed to obtain approval or authorization from Global Tech's Board for the share issuances to the Share Recipients. To do so, in the case of most of the Share Recipients, including J. Reichman and DOT8, Reichman falsely represented to Global Tech's Board that they were receiving shares in exchange for services they had performed for the company.

35. In addition, in connection with certain share issuances to the Share Recipients, Reichman falsely represented to Global Tech's transfer agents that the shares had been issued for services rendered.

36. For some of the stock issuances to the Share Recipients, Reichman directed that the transfer agents send the share certificates to a UPS box in New York City that he controlled.

37. Global Tech's stock price rose considerably between 2021 and 2023—from pennies per share prior to 2021, to above $2.00 at points in 2021, and as high as $8.00 at one point in 2022.

38. J. Reichman and DOT8 each sold large quantities of Global Tech stock when its price rose significantly.

39. Reichman also concealed that J. Reichman and DOT8 had been issued, and J. Reichman beneficially owned, a significant amount of Global Tech shares by: (i) failing to

disclose the share issuances to J. Reichman and DOT8 as related person transactions in Global Tech's 2016, 2018, and 2019 Forms 10-K (filed on April 17, 2017; March 27, 2019; and June 1, 2020, respectively), as required by Item 404 of Commission Regulation S-K; (ii) failing to disclose J. Reichman's beneficial ownership in Global Tech's 2021 S-1 filing and amended S-1 filings (filed on July 12, 2021; July 30, 2021; August 5, 2021; and August 19, 2021, respectively) that purported to disclose "persons or groups known by us to own beneficially 5% or more of our common stock"; (iii) in April 2021, directing the Former Global Tech President to delete J. Reichman's name from a list of beneficial owners of Global Tech stock obtained in the process of compiling information for the August 2021 S-1 filings; and (iv) in July 2023, instructing the Former Global Tech President not to file two required Schedule 13G Exchange Act Commission filings that would have disclosed J. Reichman's beneficial ownership of more than 5% of Global Tech's stock.

**A. Justine Reichman**

40. J. Reichman directly received nine million shares of Global Tech stock in two stock issuances during the Relevant Period, which were falsely described in Global Tech's 10-K Filings as having been made in exchange for services.

41. On July 27, 2016, Global Tech's Board authorized the issuance of one million shares to J. Reichman (and others), purportedly to pay invoices due to service providers.

42. J. Reichman did not provide any services to Global Tech in exchange for the shares she received.

43. Global Tech falsely represented in its 2016 and 2017 Form 10-K filings (filed on April 17, 2017 and March 30, 2018, respectively) that the shares J. Reichman received had been issued for "services."

44. As Reichman knew or recklessly disregarded, J. Reichman had no formal experience consulting on technology issues.

45. Reichman also falsely represented to Global Tech's transfer agent that J. Reichman had performed services for Global Tech in connection with the 2016 issuance. In a July 27, 2016 letter to the transfer agent signed by Reichman, Global Tech authorized the transfer agent to issue the one million shares to J. Reichman (among others) and attached a Board resolution dated March 31, 2016, indicating that the Board had authorized Global Tech management "the authority to use its discretion to appropriately settle any necessary outstanding invoices or obligations to professional service providers, vendors, former and present."

46. On December 21, 2019, Global Tech's Board of Directors authorized the issuance of an additional eight million shares to J. Reichman (the "Eight Million Shares") at Reichman's suggestion.

47. Global Tech's December 21, 2019 Board minutes (the "Board Minutes") inaccurately state that the Former Global Tech President "informed the board that while reviewing the A/P [accounts payable] and proposed settlements, she found that the Company had not repaid Justine Reichman for loans made by her to the Company starting in 2007 through 2016" and the Former Global Tech President "recommended and further made a motion to immediately repay Ms. Reichman by issuing eight million shares" of Global Tech stock to her.

48. The Board Minutes were inaccurate. The Former Global Tech President had not reviewed the company's accounts payable and discovered the unpaid debt to J. Reichman. Rather, Reichman told the Former Global Tech President that J. Reichman had loaned shares to Global Tech, and he suggested that the company issue the Eight Million Shares to J. Reichman.

49. In a December 21, 2019 letter to the transfer agent signed by Reichman, Global Tech authorized the transfer agent to issue the Eight Million Shares to J. Reichman and attached the inaccurate Board Minutes.

50. Global Tech falsely represented in its 2019 and 2020 Forms 10-K—filed with the Commission on June 1, 2020 and April 9, 2021, respectively—that the Eight Million Shares had been issued "for services."

51. Following the December 2019 share issuance, J. Reichman owned nine million shares of Global Tech, which she began selling in March 2021, when Global Tech's stock price rose above $1 a share (up from pennies a share in prior years).

52. In its Forms 10-K, Global Tech was required to disclose related person transactions pursuant to Regulation S-K, Item 404.

53. Regulation S-K, Item 404, requires disclosure of certain "related person transactions." Instruction 1 to Item 404 of Regulation S-K defines "related person" to include "any child" of an executive officer or director of the registrant, which would include Reichman's daughter, J. Reichman.

54. Accordingly, pursuant to Regulation S-K, Global Tech was required to disclose its share issuances to J. Reichman as related person transactions in its 2016 and 2019 Forms 10-K.

55. In its Commission filings, Global Tech did not identify J. Reichman as a recipient of its share issuances and did not disclose these issuances as related person transactions.

56. Global Tech did, however, disclose other related person transactions in its Commission filings. For example, in its Forms 10-K for years 2016 through 2020, Global Tech disclosed that it was indebted to Reichman and the Former Global Tech President and had

converted its debts into interest-bearing notes. By disclosing other related party transactions—but not the issuances to J. Reichman—these representations were half-truths that were false and misleading by virtue of their omitting the share issuances to J. Reichman.

57. Reichman approved the Global Tech share issuances to J. Reichman.

58. Reichman also instructed the Former Global Tech President not to file two Schedule 13G Exchange Act filings that would have disclosed J. Reichman's beneficial ownership of more than 5% of Global Tech's stock.

**B. DOT8**

59. In both 2016 and 2018, Reichman caused Global Tech to issue DOT8 three million shares, for a total of six million shares, purportedly in exchange for services DOT8 provided to Global Tech (the "DOT8 Issuances").

60. J. Reichman was the beneficial owner of the shares issued in the DOT8 Issuances.

61. The shares issued in the 2016 DOT8 Issuance were among the shares Global Tech reported in its 2016 Form 10-K, amended 2016 Form 10-K, and 2017 Form 10-K as having been issued "for services."

62. The shares issued in the 2018 DOT8 Issuance were reported in Global Tech's 2018 Form 10-K and 2019 Form 10-K as having been issued "for services."

63. As with the share issuances to J. Reichman, DOT8 did not perform any services in exchange for the DOT8 Issuances.

64. In connection with the 2018 DOT8 Issuance, Reichman also misrepresented to Global Tech's Board that DOT8 had performed services for Global Tech.

65. At the time of the 2018 DOT8 Issuance, DOT8 had been administratively dissolved.

66. Reichman created a document after the 2016 DOT8 Issuance that purported to provide a legitimate reason for the 2016 DOT8 Issuance.

67. On March 10, 2017, nearly a year after the 2016 DOT8 Issuance, the Former Global Tech President emailed Reichman a draft engagement letter, back-dated to July 1, 2016, for supposed services that DOT8 was to provide to Global Tech (the "Backdated Letter").

68. The Backdated Letter was on Global Tech letterhead, even though, at the time of the 2016 DOT8 Share Issuance, Global Tech was called "Tree Top," thereby evidencing the backdating.

69. In the email attaching the Backdated Letter, the Former Global Tech president wrote to Reichman that she was "Trying to get creative here."

70. The Board's 2016 consent authorizing the 2016 DOT8 Share Issuance refers to "DOT8," a name not used until 2017.

71. In connection with the 2018 DOT8 Issuance, Reichman also falsely represented to Global Tech's transfer agent that DOT8 had performed services for Global Tech. In an August 3, 2018 letter to the transfer agent signed by Reichman, Global Tech authorized the transfer agent to issue the shares to DOT8 (among others) and attached a Board resolution dated August 3, 2018, indicating that the shares were being issued "for services rendered July 1, 2017 to July 30, 2018."

72. Global Tech was required to disclose related person transactions in its Forms 10-K pursuant to Commission Regulation S-K, Item 404, which requires the disclosure of certain transactions in which "any related person had or will have a direct or material interest." This would include the DOT8 Issuances, given J. Reichman's interest in DOT8, or if Reichman did in

fact exercise control over DOT8 notwithstanding DOT8's "corrective" filings, his interest in DOT8.

73. In its Form 10-K filings for 2016 through 2019, Global Tech did not identify DOT8 as the recipient of the DOT8 Issuances and did not disclose these issuances as related person transactions, even though DOT8 was controlled by J. Reichman (or Reichman himself).

74. Global Tech did, however, disclose other related person transactions in its Form 10-K filings for 2016 through 2019. By disclosing other related party transactions—but not the issuances to DOT8—these representations were half-truths that were false and misleading by virtue of their omitting the share issuances to DOT8.

75. In connection with an audit of Global Tech's 2018 financial statements, Reichman signed and provided to the auditor a related party questionnaire dated March 13, 2019, in which he falsely represented that neither he nor a related party of his had any interest, direct or indirect, in any transactions since January 1, 2018 to which Global Tech was a party.

76. Between July 2021 and the end of 2022, J. Reichman sold a portion of DOT8's Global Tech stock for proceeds of more than $600,000 (in 2021) and more than $2.2 million in 2022. She used the proceeds for personal expenses and to renovate her home.

**C. Individual A**

77. In July 2019, Reichman caused Global Tech to issue three million shares to Individual A (his ex-wife and J. Reichman's mother) purportedly for consulting services rendered during the second quarter of 2019 (the "Individual A Issuance").

78. The Individual A Issuance was included in the share totals of Global Tech's 2019 and 2020 Forms 10-K filed with the Commission, which stated that the shares were issued in exchange for services.

79. Individual A did not provide services to Global Tech.

80. Although the Board's approval of the Individual A Issuance was dated July 31, 2019, Global Tech's letter to the transfer agent authorizing the share issuance is dated earlier: July 17, 2019.

81. In addition, on or about February 21, 2022, Reichman created a back-dated invoice for consulting services, dated July 8, 2019, on Individual A's letterhead..

**D. Individuals B, C, and D**

82. Between July 2016 and November 2017, Reichman caused Global Tech to issue 10.5 million shares to Individual B (his girlfriend); 2.75 million shares to Individual C (Individual B's son); and 150,000 shares to Individual D (Individual B's friend)—all purportedly for services rendered. In doing so, Reichman misled the Board and the transfer agent, as well as Global Tech investors.

83. In July 2016, Global Tech issued 500,000 shares to Individual B, 250,000 shares to Individual C, and 150,000 shares to Individual D (the "July 2016 Issuances").

84. The July 2016 Issuances were among the shares that Global Tech disclosed as having been issued for "services" in its 2016 Form 10-K, amended 2016 Form 10-K, and 2017 Form 10-K.

85. In connection with the July 2016 Issuances, Reichman misrepresented to the Former Global Tech President that Individuals C and D had performed services for Global Tech. With respect to Individual B, Reichman's girlfriend, Reichman did not claim to the Former Global Tech President that she had provided services; rather, he told the Former Global Tech President that issuing shares to Individual B would be like issuing shares directly to Reichman because he planned to marry Individual B.

86. Reichman also misrepresented to Global Tech's transfer agent that Individuals B, C, and D had performed services for Global Tech. In a July 27, 2016 letter to the transfer agent signed by Reichman, Global Tech authorized the July 2016 Issuances pursuant to a Board consent dated March 31, 2016, which was attached to the letter. The attached Board consent indicated that the shares were being issued to "settle any necessary outstanding invoices or obligations to professional service providers, vendors, former and present." The letter also instructed the transfer agent to send the share certificates for these issuances to the UPS box in New York City controlled by Reichman.

87. On November 22, 2017, Global Tech's Board authorized the issuance of 10 million additional shares to Individual B and 2.5 million more shares to Individual C (the "November 2017 Issuances"), which were included in the shares described in Global Tech's 2017 Form 10-K, as having been provided for services.

88. In a December 9, 2017 email, Reichman described the July 2016 Issuances as gifts to Individuals B, C, and D.

89. Individuals B, C, and D did not in fact provide any services to Global Tech.

90. In an email to Global Tech's transfer agent dated June 23, 2017, Reichman falsely represented that Individuals B, C, and D had satisfactorily completed their services to the company, among other things. Based on Reichman's representations, the transfer agent removed sales restrictions on the Global Tech shares issued to Individuals B, C, and D.

## III. Reichman Arranged for an Associate to Receive Global Tech Stock for Purported "Services" and Received 90% of the Proceeds When the Stock Was Sold

91. Reichman also enriched himself through the issuance of Global Tech shares to Individual E, who subsequently sold the shares and transmitted 90% of the proceeds to Reichman.

92. On July 6, 2016, Global Tech issued 940,000 of its shares to Individual E, with no reason for the issuance given in the authorizing Board minutes (the "Individual E Issuance"). Global Tech's 2016 Form 10-K, amended 2016 Form 10-K, and 2017 Form 10-K falsely stated that the Individual E Issuance was "for services."

93. Although the Individual E Issuance purportedly was in exchange for services, Individual E sent approximately 90% of the proceeds of the sale of those shares, about $1.4 million, to an entity controlled by Reichman—in three transfers between February 11, 2021 and April 5, 2021—and Individual E kept approximately 10% for himself.

94. In February 2021, when Global Tech's stock price rose from around $0.11 to over $1.00, Individual E began selling his Global Tech shares; by the end of March 2021, he had sold all 940,000 shares for proceeds of more than $1.5 million.

95. Between June 2021 and February 2023, Individual E sold an additional approximately 860,000 Global Tech shares, for around $2 million. As he had done previously, Individual E sent approximately 90% of the sales proceeds, around $1.7 million, to Reichman.

## IV. Global Tech's Fraudulent Offering

96. Global Tech's registration statement filed with the Commission (called a "Form S-1"), which concerned the company's August 2021 warrant offering, contained material misrepresentations about the beneficial owners of Global Tech stock.

97. On July 12, 2021, Global Tech filed an S-1 registration statement, signed by Reichman, to register for resale the shares of Global Tech common stock underlying warrants that had been distributed to Global Tech shareholders in April 2021.

98. Global Tech filed several amendments to its S-1 registration statement, each signed by Reichman, the last of which it filed on August 19, 2021 (the "S-1"). The Commission declared Global Tech's S-1 registration effective on August 26, 2021.

99. The S-1 purported to disclose the beneficial Global Tech stock ownership of each Global Tech director and executive officer, as well as all "persons or groups known by us to own beneficially 5% or more of our common stock" as of March 31, 2021 (the "S-1 Representation").

100. As of March 31, 2021, J. Reichman beneficially owned nearly 16 million shares of Global Tech stock (around 6.9% of Global Tech's common stock), through her beneficial ownership of around 8.7 million shares held in her name and around 7.2 million shares held by DOT8.

101. As of March 31, 2021, J. Reichman was among the largest shareholders of Global Tech stock. The S-1, however, did not disclose J. Reichman's beneficial ownership.

102. Thus, the S-1 Representation was false and misleading.

103. Reichman knew or recklessly disregarded that the S-1 Representation was false and misleading because he had directed that the Global Tech shares be issued to J. Reichman and DOT8.

104. The S-1 disclosed other related party transactions that Global Tech entered into in 2019, such as notes entered into between Global Tech and Reichman in December 2019. The S-1 did not, however, disclose as a related person transaction the Eight Million Shares it had issued to J. Reichman in December 2019. By disclosing other related party transactions—but not the issuance to J. Reichman—these representations were half-truths that were false and misleading by virtue of their omitting the share issuances to DOT8.

105. As part of the process of compiling information for the S-1 filing, the Former Global Tech President obtained a list of beneficial Global Tech shareholders, which included J. Reichman.

106. On or about April 15, 2021, Reichman directed the Former Global Tech President to delete J. Reichman's name from the list.

107. The Former Global Tech President then removed J. Reichman's name from the list of beneficial owners of Global Tech stock and sent it to the transfer agent in connection with the S-1.

108. In late March 2021, in a further attempt to conceal J. Reichman's ownership of Global Tech stock before the S-1 filings, Reichman used J. Reichman's electronic signature to ask the transfer agent to transfer eight million Global Tech shares in J. Reichman's name to book entry form.

109. Reichman's requested transfer of J. Reichman's shares had the effect of removing J. Reichman's name from the Global Tech shareholder list. Subsequently, in May 2021, after the record date relevant to the warrant offering, these shares were transferred back into J. Reichman's name, and a new certificate was issued. J. Reichman was not aware of these transfers.

110. In connection with the fraudulent S-1 offering, Global Tech raised around $3.3 million. Reichman personally profited by transferring around $2.5 million from Global Tech's bank account to his own personal account.

## V. Misrepresentations Concerning the Global Tech Group Industries Group Profit Sharing Plan Trust

111. In January 2009, Global Tech established the Global Tech Industries Group Profit Sharing Plan Trust ("Global Tech Trust"), purportedly for the benefit of Global Tech employees.

112. At the time it established the Global Tech Trust, Global Tech transferred 20 million shares from the company to the Global Tech Trust. Between 2010 and 2019, Global Tech transferred additional shares into the trust and, at the end of 2019, Global Tech Trust contained 23.5 million Global Tech shares.

113. The Forms 10-K that Global Tech filed for the years 2020-2023, each signed by Reichman, reflected that the Global Tech Trust held 23.5 million shares and further represented that "none of the shares have been committed for release."

114. In May 2022, Reichman authorized the sale of 10 million Global Tech shares held by the Global Tech Trust to a Wyoming corporation controlled by a third party.

115. The Wyoming corporation sold the 10 million shares for $2 million, of which $1.8 million was wired to Reichman.

116. Despite the fact that Reichman had personally directed the sale of shares from the Global Tech Trust and had benefitted from the sale, he signed Global Tech's Forms 10-K in 2022 and 2023 that continued to falsely represent that the Global Tech Trust held 23.5 million shares and that "none of the shares have been committed for release."

## VI. Reichman Failed to Disclose His Sales of Global Tech Stock

117. In October 2022, Global Tech implemented a 10b5-1 plan allowing each of its Directors, including Reichman, to sell 1% of their holdings monthly, over the course of one year.

118. As an officer and director of Global Tech, and the beneficial owner of more than 10% of Global Tech common stock, Reichman was required to timely file reports with the Commission—including a Form 4—pursuant to Exchange Act Section 16(a) and Rule 16a-3 thereunder which require certain directors and officers, and persons who beneficially own more

than 10% of a registered class of a company's equity securities, to file reports of ownership and changes in ownership with the Commission.

119. A Form 4 must be filed within two business days following the corresponding transaction.

120. On October 3, 2022, Reichman sold 32,368 shares of Global Tech stock.

121. Reichman failed to file a Form 4 disclosing his October 3, 2022 stock sale within two days, as required by Exchange Act Section 16(a) and Rule 16a-3 thereunder.

122. On March 30, 2023, Global Tech filed Forms 4 on behalf of Reichman and the other Global Tech Directors who had sold Global Tech stock shares between October 3, 2022, and March 1, 2023.

123. Between April 2023 and February 2024, Reichman made an additional seven late Form 4 filings.

124. On April 5, 2023, Reichman sold 32,368 shares. The Form 4 was filed on April 11, 2023.

125. On June 1, 2023, Reichman sold 32,368 shares. The Form 4 was filed on June 12, 2023.

126. On July 19, 2023, Reichman sold 64,736 shares. The Form 4 was filed on July 24, 2023.

127. On August 15, 2023, Reichman sold 64,736 shares. The Form 4 was filed on August 21, 2023.

128. On November 15, 2023, Reichman sold 64,736 shares. The Form 4 was filed on November 24, 2023.

129. On December 15, 2023, Reichman sold 64,736 shares. The Form 4 was filed on January 18, 2024.

130. On February 15, 2024, Reichman sold 64,736 shares. The Form 4 was filed on February 20, 2024.

131. Reichman also made other late Form 4 filings related to trades or dispositions of Global Tech that were not pursuant to the 10b5-1 plan.

132. On December 29, 2022, Reichman acquired 21,288,187 shares. The Form 4 was filed on May 9, 2023.

133. On December 31, 2023, Reichman disposed of 20,000 shares as a gift. The Form 4 was filed on February 20, 2024.

134. On June 11, 2024, Reichman disposed of 21,288,187 shares. The Form 4 was filed on July 12, 2024.

## VII. The Justine Reichman 2021 Trust

135. The deed to J. Reichman's home, which was purchased for $2.5 million using proceeds of the fraudulent schemes described above, is held by The Justine Reichman 2021 Trust.

136. In July 2021, Reichman paid around $1.4 million towards the purchase of the house with proceeds from the Individual E kickback scheme.

137. J. Reichman paid the remaining around $1 million using the proceeds of Global Tech stock sales.

138. J. Reichman subsequently used over $350,000 derived from DOT8's sales of Global Tech stock to improve her home.

## TOLLING AGREEMENTS

139. Reichman entered into a tolling agreement with the Commission, in which he agreed to toll any statute of limitations applicable to the conduct and claims alleged herein for the period between May 1, 2026 and October 27, 2026.

## FIRST CLAIM FOR RELIEF
**Violations of Securities Act Section 17(a)**
**(Reichman)**

140. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 10, 13 through 134, and 139.

141. Defendant, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

142. By reason of the foregoing, Defendant directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(Reichman)**

143. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 10, 13 through 134, and 139. Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

144. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

**THIRD CLAIM FOR RELIEF**
**Violations of Exchange Act Section 16(a) and Rule 16a-3 Thereunder**
**(Reichman)**

145. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1, 13 through 18, 21, 117 through 134, and 139.

146. Defendant, as the direct or indirect beneficial owner of more than ten percent of a class of equity securities (other than an exempted security) which was registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l] and/or is an officer or director of an issuer of such securities, failed to timely and accurately file Forms 4 with the Commission containing the information required therein.

147. By reason of the foregoing, Defendant violated and, unless enjoined, will again violate Exchange Act Section 16(a) [15 U.S.C. § 78p(a)] and Rule 16a-3 [17 C.F.R. § 240.16a-3] thereunder.

## FOURTH CLAIM FOR RELIEF
## Aiding and Abetting Global Tech's Violations of Section 13(a) of the Exchange Act and Rule 13a-1 Thereunder
## (Reichman)

148. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 10, 13 through 134, and 139.

149. As alleged above, Global Tech failed to file, in accordance with such rules and regulations as the SEC prescribes as necessary and appropriate, such information and documents as the SEC requires to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or such annual reports as the SEC prescribes, or failed to include, in addition to the information expressly required to be included in any statement or report filed pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] such further material information, if any, as may have been necessary to make the required statements, in the light of the circumstances under which they were made, not misleading.

150. By reason of the foregoing, uncharged entity Global Tech violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder.

151. Reichman knowingly or recklessly provided substantial assistance to uncharged entity Global Tech in its violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 [17 C.F.R. § 240.13a-1] thereunder.

152. Accordingly, Reichman aided and abetted the violation described above and, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Reichman is liable for such violation.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(All Relief Defendants)**

153. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1, 3 through 10, 13 through 17, 19 through 23, 29 through 76, 91 through 116, 135 through 139.

154. By virtue of the Defendant's illegal conduct alleged herein, Justine Reichman, individually and as trustee of the Justine Reichman 2021 Trust, received ill-gotten gains, to which she has no legitimate claim.

155. Justine Reichman, individually and as trustee of the Justine Reichman 2021 Trust, obtained the ill-gotten gains under circumstances in which it is not just, equitable, or conscionable for them to retain the funds.

156. Justine Reichman, individually and as trustee of the Justine Reichman 2021 Trust, has therefore been unjustly enriched and must disgorge the ill-gotten gains she has received.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Sections 17(a) [15 U.S.C. §§ 77q(a)], Exchange Act Sections 10(b),

13(a), and 16(a) [15 U.S.C. §§ 78j(b), 78m(a), and 78p(a)] and Rules 10b-5, 13a-1, and 16a-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.13a-1, and 240.16a-3];

**II.**

Ordering Defendant to disgorge all ill-gotten gains he received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

**III.**

Ordering Defendant to pay civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**V.**

Permanently enjoining Defendant from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer or sale of any security, provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal accounts;

**VI.**

Ordering Justine Reichman, individually and as trustee of the Justine Reichman 2021 Trust, to pay, with prejudgment interest, all ill-gotten gains by which she was unjustly enriched,

pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; and

**VII.**

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

The Commission demands a trial by jury.

Dated: New York, New York
October 2, 2026

Travis Hill
Sheldon L. Pollock
Alison Conn
Travis Hill
Yitzchok Klug
Alexander Levine
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004-2616
212-336-9135 (Hill)
Hilltr@sec.gov